Filed 4/29/26 Akala v. L.A. Unified School Dist. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| AMOSUN AKALA et al., | B340852 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV34738) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt, III, Judge. Affirmed.

Kowal Law Group, Timothy M. Kowal, Teddy T. Davis and Ryan Merker for Plaintiffs and Appellants.

Littler Mendelson, Connie L. Michaels, Donna Leung, Joy Rosenquist and Amelia A. McDermott for Defendant and Respondent.

_____

Plaintiffs Amosun Akala, Stacy Hayes, and Dan Stelzer appeal the trial court's summary judgment in their California Fair Employment and Housing Act (FEHA; Gov. Code,[1] § 12900 et seq.) action against their former employer, defendant Los Angeles Unified School District (LAUSD). Because we perceive no error, we affirm.

## FACTUAL BACKGROUND

Plaintiffs worked in the facilities department of LAUSD.[2] Hayes was a project engineer from June 1999 until his early retirement on December 14, 2021. The last position he held was assistant project manager for projects including painting, football field turf, safety, and technology. His role involved pre-construction planning, contract negotiations, managing construction schedules, tending to daily onsite construction activities, managing project close-outs, and providing written and oral reports. Hayes worked onsite both before and throughout the pandemic. At his last project, he and his team were housed in their own offices inside a construction trailer at a school. During the pandemic, Hayes's team followed safety protocols like weekly testing, masking, and physical distancing.

Stelzer worked as a locksmith from 2007 until January 31, 2022. He repaired and replaced locks and door hardware at approximately 30 to 40 facilities within his territory. Seventy-five percent of his job was onsite. His regular shift was weekdays 6:30 a.m. to 3:00 p.m., with overtime between 3:00 p.m. and

---

[1]    Undesignated statutory references are to the Government Code.

[2]    We construe the facts in the light most favorable to Plaintiffs. (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 144.)

2

7:00 p.m. and on Saturdays. Stelzer's group was "not ever shut down at all" and was "on campus every day through the whole pandemic" because "[b]uildings are there always needing maintenance." When working, Stelzer "[a]lways" interacted with LAUSD's staff onsite, because his job required "a lot of communication and understanding of" the problem he was there to address. Nevertheless, Stelzer's "job was solitary in nature and brought [him] into very limited physical contact with other[s]," he "normally fix[ed] locks when no one was around" (e.g., before school, during lunchbreaks, or when classrooms were empty), and "[i]t was always possible to coordinate [his] work so that no one was present or physically close."

Akala was also employed as a locksmith, from February 2020 until his termination on December 8, 2021. He repaired and replaced door locks and hardware. He was responsible for approximately 30 to 40 schools in his territory. His regular shift was weekdays 7:00 a.m. to 3:30 p.m., with regular Saturday overtime and occasional weekday overtime from 3:30 p.m. to 5:30 p.m. His job was entirely in person. While students were not present if he were repairing a lock in a private administrative office, students were generally present about 60 percent of the time he was working. Nevertheless, Akala's "job was solitary in nature and brought [him] into very limited physical contact with other[s]," and he "normally fix[ed] locks when no one was around."

In March 2020, the prevalence of COVID-19 in Los Angeles County caused LAUSD to limit in-person instruction and close its facilities to students, faculty and staff. Soon thereafter, the Governor required all schools to close. LAUSD suspended in-person instruction for the remainder of the school year, and

3

students instead engaged in distance learning. That continued into the following academic year (early 2021).

In spring 2021, LAUSD transitioned to a hybrid education model in which some in-person instruction was supplemented with distance learning. To provide in-person instruction safely, LAUSD partnered with public health officials to develop a multi-pronged strategy to mitigate the risks of COVID-19 to its students and staff, including periodic asymptomatic testing, required masking, and physical distancing. Students and staff were required to take PCR tests each week. LAUSD required those who tested positive (and those individuals in close contact with them) to quarantine for 10 days.

Meanwhile, LAUSD developed a plan to fully reopen its schools for in-person learning for the 2021–2022 school year. That plan included encouraging all eligible individuals to be vaccinated against COVID-19. To further its goal, in August 2021 LAUSD required all employees be fully vaccinated against COVID-19 by October 15, 2021, as a condition of employment. LAUSD formed the Sincerely Held Religious Belief Reasonable Accommodation Committee to review employee exemption requests based on sincerely held religious beliefs.

Plaintiffs each informed LAUSD the COVID-19 vaccination violated their sincerely held religious beliefs. They believed the vaccines were developed using material originating from an aborted fetus, and that receiving a vaccine would make them participants in voluntary abortions, which is offensive to their religious teachings. LAUSD did not question the sincerity of Plaintiffs' religious beliefs.

Plaintiffs requested accommodations to be exempt from the vaccination requirement. All Plaintiffs were willing to undergo

daily PCR testing at their own expense. They were also willing to "comply with other safety protocol[s] including quarantine, masking, and social distancing."[3] In addition, both Akala and Stelzer offered to work night shifts to avoid contact with others. "Hayes proposed working entirely remotely or limiting any necessary on-site presence to hours when no staff or students were [present]." LAUSD "rejected [Plaintiffs'] proposed alternatives."

Plaintiffs did not submit evidence of vaccination. In October 2021, LAUSD suspended all employees who had failed to submit proof of vaccination, and those employees were later processed for termination. LAUSD terminated Akala's employment on December 8, 2021, and Stelzer's on January 31, 2022. Hayes was not terminated, but was allowed to retire eight months early, as of December 14, 2021.

In September 2023, LAUSD rescinded the employee vaccination mandate. It informed Akala and Stelzer they could reapply for employment, but both refused to do so.

**PROCEDURAL HISTORY**

In October 2022, Plaintiffs filed this action against LAUSD alleging various FEHA violations:

(1) Failure to accommodate religious belief or observance (§ 12940, subd. (*l*));

(2) Discrimination based on religion (§ 12940, subd. (a));

(3) Harassment based on religion (§ 12940, subd. (j));

(4) Discrimination based on national origin (§ 12940, subd. (a));

---

[3] Nevertheless, Stelzer admitted while he was employed, he had refused to comply with some required COVID-19 safety protocols.

(5) Harassment based on national origin (§ 12940, subd. (j));

(6) Retaliation for opposing FEHA violations and requesting religious accommodations (§ 12940, subds. (h), (*l*)(4)); and

(7) Failure to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment (§ 12940, subd. (k)).

LAUSD moved for summary judgment, or alternatively, summary adjudication of a number of issues. Plaintiffs opposed.

The trial court ultimately granted LAUSD's motion for summary adjudication of each of Plaintiffs' causes of action.[4] The failure to accommodate religious belief cause of action failed because LAUSD demonstrated no reasonable accommodation was possible without imposing an undue hardship. The religious discrimination and retaliation causes of action failed because LAUSD showed Plaintiffs were terminated for a legitimate reason—their failure to be vaccinated. Moreover, Plaintiffs failed to show a triable issue of material fact that reason was pretextual. The harassment cause of action failed because Plaintiffs did not show they experienced harassment within the meaning of FEHA—that is, they did not show the purported harassment was severe or pervasive enough to create a hostile work environment. And finally, the cause of action for failure to prevent retaliation, harassment, and discrimination necessarily failed because Plaintiffs had shown no underlying FEHA violation.

---

[4] Plaintiffs do not challenge the summary adjudication of their causes of action for discrimination and harassment based on national origin.

6

Because the trial court granted summary adjudication of all causes of action, it granted LAUSD's motion for summary judgment. Judgment was entered on July 1, 2024. Plaintiffs timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1).)

**DISCUSSION**

We review de novo the trial court's order granting a defendant's motion for summary judgment. (*Guz v. Bechtel Nat., Inc.* (2000) 24 Cal.4th 317, 334.) We view the evidence in the light most favorable to the nonmoving party and decide whether there is a triable issue of any material fact. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859 (*Serri*); see also Code Civ. Proc., § 437c, subd. (c).)

On this record, the trial court correctly granted summary adjudication of all causes of action; therefore, summary judgment was appropriate.

## I.    Failure to Accommodate

FEHA prohibits an employer from "discriminat[ing] against a person . . . because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." (§ 12940, subd. (*l*)(1).)

To make out a prima facie case for relief, the plaintiff must first show he "sincerely held a religious belief; the employer was aware of that belief; and the belief conflicted with an employment requirement." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1011; see also *Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th

7

345, 370 (*Soldinger*).) If the plaintiff makes that showing, "the burden shifts to the employer to establish that 'it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship.' " (*Gemini*, at p. 1011.)

When "[an] employer fails to initiate an accommodation for the religious practices, the burden is . . . on the employer to prove it [would have] incur[red] an undue hardship if it accommodate[d] that belief." (*Soldinger*, *supra*, 51 Cal.App.4th at p. 371.) LAUSD does not dispute it did not offer or initiate an accommodation for Plaintiffs' religious beliefs.[5] Therefore, like the trial court, we consider whether LAUSD demonstrated it was "unable to reasonably accommodate [Plaintiffs'] religious belief[s] . . . without undue hardship." (§ 12940, subd. (*l*)(1).)

### A. LAUSD Demonstrated No Reasonable Accommodation Was Possible

" '[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any *reasonable* accommodation without such hardship.' " (*Soldinger*, *supra*, 51 Cal.App.4th at p. 371, italics added.) When an employer fails to "explore any available alternatives, it violate[s] its statutory obligation to accommodate unless [it] establishe[s] that any *reasonable* accommodation would have caused it an undue hardship." (*Id.* at p. 373, italics added.)

" 'Undue hardship' " is defined as "an action requiring significant difficulty or expense, when considered in light of the following factors: [¶] (1) The nature and cost of the

---

[5] In their reply brief, Plaintiffs concede they have no cause of action for failure to engage in the interactive process under section 12940, subdivision (n).

8

accommodation needed. [¶] (2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility. [¶] (3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities. [¶] (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. [¶] (5) The geographic separateness or administrative or fiscal relationship of the facility or facilities." (§ 12926, subd. (u); see also *Petersen v. Snohomish Regional Fire and Rescue* (9th Cir. 2025) 150 F.4th 1211, 1217 (*Petersen*) [analyzing undue hardship under federal law]; *Soldinger, supra*, 51 Cal.App.4th at p. 370, fn. 11 ["California courts look to . . . federal cases . . . in evaluating failure to accommodate allegations"].) This includes analyzing the effect of the accommodation on coworkers, to the extent that effect bears upon the conduct of the employer's business. (*Groff v. DeJoy* (2023) 600 U.S. 447, 472.)

As an initial matter, we evaluate LAUSD's decision at the time it refused to accommodate Plaintiffs—that is, in the broader context of the COVID-19 pandemic during fall 2021. (See *Petersen, supra*, 150 F.4th at p. 1222 ["Nor can we judge [an employer] with the clarity of hindsight or the benefit of post-pandemic debates over what measured responses frontline employers should have taken."].)

COVID-19 is caused by infection with a novel coronavirus, SARS-CoV-2, that spreads rapidly among people; cases were first reported in China in late 2019. Because of its novelty, few (if any)

9

people worldwide were immune to it, so "the entire population . . . was susceptible to infection." While the original SARS-CoV-2 was itself highly infectious, subsequent mutations produced additional variants which were "found to be even more infectious . . . , almost on a par with measles virus." By July 2021, it was estimated the United States had experienced 35 million cases of COVID-19 and 612,000 deaths therefrom.

While some people infected with COVID-19 remain asymptomatic or experience mild disease, "severe illnesses and deaths . . . can occur in individuals of all ages, including previously healthy adults and children." "[T]hose at increased risk of severe illness, hospitalization, and death . . . are teachers over the age of 50 and those with diverse underlying conditions," such as obesity or diabetes. COVID-19 can also cause the severe illnesses Multisystem Inflammatory Syndrome in Children and Multisystem Inflammatory Syndrome in Adults. Finally, even people with mild COVID-19 cases can "go on to have persistent sequelae, [or] long COVID . . . , the frequency, duration, and severity of which remain to be characterized."

By summer 2021, COVID-19 rates in Los Angeles County had begun to rise again. That fall, LAUSD had just reopened for full-time in-person instruction for the first time since March 2020. COVID-19 rates continued to rise throughout that period, ultimately "producing a very large peak in . . . infections[,] hospitalizations[,] and deaths at the end of 2021 and the beginning of 2022." It was accordingly "difficult to predict future trends" in COVID-19 rates, including how long the pandemic would last or mitigation measures would be needed.

### 1. Plaintiffs' Masking, Testing, and Quarantining Accommodation Posed an Undue Hardship

The trial court correctly determined LAUSD demonstrated it would have been an undue hardship for LAUSD to accommodate Plaintiffs in fall 2021 by allowing them to continue working in their positions, onsite, unvaccinated, while abiding by masking, testing, and quarantining protocols (i.e., nonpharmaceutical interventions). Specifically, the trial court determined: (1) "the non-pharmaceutical interventions . . . were not sufficient to protect against COVID-19; (2) [LAUSD] saved 'millions of dollars as a result' of implementing its vaccination policy" in lieu of weekly testing; and "(3) [Plaintiffs' suggested accommodation] could have resulted in the further spread[] of COVID-19, could have endangered the health and safety of its employees, students, and surrounding community, and could have resulted in disruptions to its workforce."

We agree LAUSD showed it would suffer undue hardship in accommodating Plaintiffs in light of the significant health and safety, operational, and financial burdens it would impose in the context of the extraordinary challenge presented by the COVID-19 pandemic. (See *Petersen*, *supra*, 150 F.4th at p. 1218 [discussing those categories for undue hardship in a Title VII case].)

**Health and Safety Burdens.** (See § 12926, subd. (u)(2), (4).) The health and safety of LAUSD's students, teachers, and staff (including Plaintiffs) would be jeopardized by allowing Plaintiffs in fall 2021 to work onsite, unvaccinated, with a masking, testing, and quarantining protocol. COVID-19 posed serious health risks. Requiring vaccinations "support[ed] the

11

safety of . . . students, teachers, staff, and the community at large, and . . . minimize[d] the risk of transmission throughout . . . schools and community." Vaccinating employees "was a critical component of the multi-dimensional plan to maximize the safety of teachers, other staff, students and visitors and to minimize disruptions to in person education of students in 2021." LAUSD's experts explained "the more people [who] were vaccinated, the less chance they're going to get the virus or transmit it." Not requiring those vaccinations "would have presented significant and unnecessary risks to a sizable number of individuals."

Specifically, the evidence showed unvaccinated individuals were at substantially and materially higher risks of being both infected with COVID-19 and hospitalized as a result. A July 2021 study of Los Angeles public health records found "the [COVID-19] infection rate among unvaccinated persons was 4.9 times greater than those [who] were vaccinated and the hospitalization rate was 29.2 times greater." Other studies found a more pronounced difference: a fall 2021 study estimated infection rates and hospitalization rates among unvaccinated people were 13.9 times and 53.2 times, respectively, that of vaccinated people. In addition, other "studies have shown that COVID-19 vaccination can reduce infection with and transmission of [the virus]." While vaccinated individuals could still become infected, their illness was often mild, and they often have substantially less virus present in their noses than unvaccinated infected individuals. Thus, requiring staff to be vaccinated substantially reduced health and safety risks from COVID-19 to those vaccinated individuals as well as to other LAUSD employees and students. Given the potentially serious consequences of infection with

12

COVID-19, allowing an unvaccinated employee to work onsite with a masking, testing, and quarantining accommodation posed substantial health and safety risks to staff, students, and visitors to campus.

**Operational Burdens.** (See § 12926, subd. (u)(2), (4).) Allowing Plaintiffs to work onsite, unvaccinated, with a masking, testing, and quarantining protocol would also impose substantial operational burdens on LAUSD. It risked exposing LAUSD to significant employee and student absenteeism as a result of COVID-19 illness and quarantine. From April 2021 until approximately May 2023, LAUSD required staff and students who were infected with COVID-19 or in close contact with an infected person to quarantine for 10 days. The presence of unvaccinated individuals, with their associated higher risk of COVID-19 infection, thus "made work disruptions more likely." Vaccinated people were "less likely to get sick and have to miss work," and were "less likely to test positive and have to be kept out of work as a result of testing positive." Moreover, "vaccination protects . . . 24/7 . . . and therefore reduces the likelihood [an employee] will get infected and have to be out of the workforce." CDC guidance did not require vaccinated individuals to quarantine if they were exposed to COVID-19, which meant they "could more quickly resume their normal activities"—e.g., returning to work. Thus, staff vaccinations allowed LAUSD "to maintain its business operations without significant disruption arising from student, teacher, and worker COVID-19 infections."

Vaccinated workers, with their lower chance of infection, also reduced the risk of COVID-19 outbreaks in schools. When outbreaks occurred, "need for isolation, quarantine, and other measures produced substantial disruptions in affected schools."

13

That had a significant detrimental effect on LAUSD's education process and learning environment. While LAUSD could use online or hybrid distance learning models when in-person instruction was impossible, that approach was undesirable because it led to "negative effects on children[,] includ[ing] both impairments to education and adverse mental health outcomes."

Thus, requiring staff vaccinations reduced the likelihood LAUSD's educational operations would be disrupted by staff illness, absenteeism, and COVID-19 outbreaks.

**Financial Burdens.** (§ 12926, subd. (u)(2).) Requiring workers to be vaccinated "would decrease overall rates of COVID-19 infection," which ultimately allowed LAUSD to "significantly reduce the costs associated" with its weekly PCR COVID-19 testing program. That testing program was "a heavy financial burden" to LAUSD and involved testing "every student and staff member" weekly, amounting to approximately half a million tests per week. Thus, requiring staff vaccinations enabled LAUSD to discontinue its expensive, districtwide testing program and its associated administrative costs.

All of these substantial burdens combined to demonstrate allowing Plaintiffs to remain onsite in their positions, unvaccinated, with a masking, testing, and quarantine accommodation imposed an undue hardship upon LAUSD.

## 2. Plaintiffs Failed to Show a Triable Issue of Fact Regarding Undue Hardship

We also conclude the trial court did not err in finding Plaintiffs failed to meet "their burden to show that a triable issue of material fact exists as to the existence of undue hardship on [LAUSD]." (See *Soldinger*, *supra*, 51 Cal.App.4th at p. 373 [at

14

summary judgment, we "determine if there are triable issues of fact"].)

Plaintiffs first argue there was a triable issue of material fact because LAUSD had previously "protected health and safety through daily symptom checks, masking, distancing, and mandatory PCR testing before the vaccine mandate took effect." But this record showed nonpharmaceutical interventions were inadequate to protect the health and safety of students and employees and to ensure the successful delivery of in-person instruction to students. Plaintiffs also ignore the significant operational and financial burdens those interventions imposed on LAUSD, both in direct expenses for testing programs and indirectly in work disruption via absenteeism. Thus, that nonpharmaceutical interventions were used in the past with some success does not show a triable issue of material fact that accommodating Plaintiffs in fall 2021 by allowing them to work onsite, unvaccinated, with those interventions was not an undue hardship.

Second, Plaintiffs argue the trial court wrongly discounted their expert's evidence "that frequent PCR testing would have been at least as effective as . . . vaccination alone in preventing workplace spread" of COVID-19. But Plaintiffs' narrow focus on viral transmission in the workplace ignores that is only one aspect of the substantial burdens COVID-19 imposed on LAUSD. While the vaccine did directly reduce workplace transmission by infected individuals, it also produced myriad other benefits—such as reducing the chance a vaccinated individual became infected at all (protection that operated continuously, not just while the employee was at work). The vaccine thus also reduced workplace transmission indirectly by reducing the chance an infected person

would be onsite in the first place. In addition, vaccinated workers were less likely to miss work due to either infection or quarantine. Requiring vaccines thus eased LAUSD's operational burden of worker absenteeism. Even crediting Plaintiffs' evidence that if they were infected with COVID-19, a masking, testing, and quarantining protocol would have reduced their transmission of that virus to others in the workplace by an amount comparable to the vaccine,[6] that does not demonstrate a triable issue of material fact that accommodating Plaintiffs in this manner did not impose an undue hardship on LAUSD.

Finally, in their reply brief, Plaintiffs argue LAUSD's evidence of undue hardship is not sufficiently tailored to the specific accommodations they proposed for themselves. (See *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 733.) For example, they point out the cost savings LAUSD generated by discontinuing its universal testing program do not show regularly testing the three of them, rather than tens of thousands, would have been an undue hardship.

But Plaintiffs ignore the specific evidence in the record that vaccinated employees were substantially less likely to become infected with COVID-19 (and to suffer serious illness from it) than unvaccinated individuals. They also ignore the substantial burdens accommodating Plaintiffs' unvaccinated status would impose, with regard to the health and safety of these individual Plaintiffs, their coworkers, other staff and students at their facilities, the operational burden of worker absenteeism, and the

---

[6]     The record, however, indicates masking was less effective in reducing transmission in the real world than in laboratory studies like the one relied upon by Plaintiffs.

16

material effect on LAUSD's delivery of educational services to its students.

### 3. Plaintiffs' Other Proposed Accommodations Do Not Create a Triable Issue of Material Fact

Plaintiffs further argue they proposed alternative accommodations, such as Akala and Stelzer "work[ing] after hours to avoid contact with staff or students" or Hayes working "remotely or isolate[d] in his office trailer" where he could participate in meetings via videoconferencing.

But Plaintiffs have pointed to no evidence in this record indicating those proposed accommodations alter the undue hardship analysis we already described above. For example, there is no evidence quantifying any incremental reduction in workplace viral transmission rates produced by after-hours or isolated work. There is no evidence after-hours or isolated work would reduce the likelihood of Plaintiffs' being infected with or exposed to COVID-19 and having to miss work. And, there is no evidence those proposed accommodations would not increase other burdens upon LAUSD—for example, because it could be more challenging to monitor Plaintiffs' compliance with masking and cleaning protocols if they were working alone.

Moreover, while LAUSD was required to "establish[] that any reasonable accommodation would have caused it an undue hardship" (*Soldinger*, *supra*, 51 Cal.App.4th at p. 373), it had no burden to do so for all possible accommodations. (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1227 [the question is "whether the accommodation requested is reasonable and thus required in the first place"].) It is well established "FEHA does not require [an] employer to create a new position to

17

accommodate an employee" (*Raine*, at p. 1226), nor require the employer to "substantially alter" existing positions (*id.* at p. 1228).

On this record, Plaintiffs' proposed after-hours shifts and remote work were not reasonable accommodations as a matter of law. We agree with the trial court this record does not show any other employees in Plaintiffs' positions (locksmiths or project managers) "worked primarily after hours, or . . . were able to work remotely." Akala and Stelzer uniformly testified locksmiths worked onsite during the day; they prioritized the order of their in-person response to service calls (including emergency lockouts and high priority restroom doors) from the 30 to 40 facilities in their assigned territory. Stelzer testified he "[a]lways" interacted with LAUSD's staff onsite, because his job required "a lot of communication and understanding of" the problem he was there to address. While Akala's and Stelzer's work sometimes required overtime after school hours, there was no evidence any locksmiths worked a regular after-hours or night shift. That Akala and Stelzer subjectively believed their positions could be reconfigured to work after hours or outside the presence of others is not evidence creating a genuine issue of fact that it was reasonable to require LAUSD to do so. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994 (*Taylor*) [" ' "[t]he employee's 'subjective beliefs . . . do not create a genuine issue of fact' " ' "].) LAUSD was not required to create new locksmith positions to accommodate Akala and Stelzer.

Likewise, nothing in the record suggests Hayes's proposed accommodation to work remotely (offsite) or in isolation (onsite) was reasonable. There was no evidence any other project engineers or project managers worked remotely or in isolation.

On the contrary, the evidence showed Hayes's position required onsite presence to evaluate and inspect project sites and to hold regular in-person meetings with the plant manager or principal of the school. As with Akala and Stelzer, Hayes's subjective belief his job could be reconfigured to perform aspects remotely or in isolation is not evidence creating a genuine issue of fact that it was reasonable to require LAUSD to do so.

## II.    Religious Harassment

FEHA makes it unlawful "[f]or an employer . . . , because of . . . religious creed . . . , to harass an employee . . . ." (§ 12940, subd. (j)(1).) "To establish a prima facie case of harassment, [a plaintiff] must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 563 (*Galvan*).)

The trial court correctly determined LAUSD showed Plaintiffs could not make out a prima facie case of religious harassment, and Plaintiffs failed to demonstrate a triable issue of material fact to the contrary.

### A.    FEHA Harassment Differs from FEHA Discrimination

As a threshold matter, "[h]arassment is distinguishable from discrimination under the FEHA." (*Serri, supra,* 226 Cal.App.4th at p. 869.) " '[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated

19

through interpersonal relations in the workplace.' " (*Ibid.*) On the other hand, " '[h]arassment claims are based on a type of conduct that is avoidable and unnecessary to job performance,' " such as the use of slurs or derogatory drawings. (*Ibid.*) " '[T]he Legislature intended that commonly necessary personnel management actions such as . . . firing, job or project assignments, office or work station assignments, promotion[s]' " and the like " 'do not come within the meaning of harassment.' " (*Id.* at p. 870.) They "may retrospectively be found discriminatory if based on improper motives, but in that event, the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.' " (*Ibid.*)

Thus, to the extent Plaintiffs rely upon the same evidence of "how [LAUSD] responded to their religious objections, how those objections were dismissed, and the workplace consequences that followed from [LAUSD's] categorical refusal to consider alternatives" upon which their section 12940, subdivision (a) discrimination cause of action was based, that evidence does not amount to actionable harassment for purposes of subdivision (j).

## B. There Is No Triable Issue of Material Fact Plaintiffs Suffered Actionable Harassment

The trial court determined there was no triable issue of material fact the purportedly harassing conduct Plaintiffs experienced was sufficiently severe or pervasive as to interfere with their work environment. We agree. " '[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of

20

employment and create a work environment that qualifies as hostile or abusive to employees because of their [protected status].' [Citation.] 'The harassment cannot be occasional, isolated, sporadic, or trivial; the plaintiff must show a " 'concerted pattern of harassment of a repeated, routine or a generalized nature.' " ' " (*Galvan, supra*, 37 Cal.App.5th at p. 564.)

"Moreover, '[t]he harassment must satisfy an objective and a subjective standard. " '[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." . . .' " [Citation.] And, subjectively, an employee must perceive the work environment to be hostile.' " (*Galvan, supra*, 37 Cal.App.5th at pp. 564–565.) That is, " ' "[t]he plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [he] was actually offended." ' " (*Id.* at p. 565.)

None of the Plaintiffs demonstrated a triable issue of material fact he was harassed within the meaning of FEHA.

### 1.    Hayes

Plaintiffs' opening brief argues they presented "direct evidence of ridicule and hostility," but discusses testimony only from Akala and Stelzer. Because the opening brief does not sufficiently argue Hayes was harassed, we do not consider that issue further. (See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 ["An appellate court 'will not develop the appellants' arguments for them . . . .' "].)

### 2.    Akala

Plaintiffs argue Akala's declaration stated "LAUSD allowed hostile comments and attitudes about unvaccinated persons to

21

permeate in my work environment even though LAUSD knew that unvaccinated persons like myself were unvaccinated due to our religious beliefs." First, that conclusory statement is not evidence creating triable issue of material fact that the purported harassment was objectively severe as to create a hostile work environment. (See *Taylor*, *supra*, 67 Cal.App.5th at p. 994 [disregarding "legal conclusions [and] ultimate facts" in an employee's affidavit].)

Second, this record does not show a triable issue of material fact Akala was harassed within the meaning of FEHA. Akala said he received "more than a half dozen hostile comments . . . when [he] checked in to facilities" that "accus[ed] [him] of endangering other people" because he was unvaccinated. When asked what had transpired, he said it was "just the treatment that you receive," and he could "sense that someone has . . . some type of animosity towards [him]." Akala denied anyone said anything "particularly offensive to [him] that upset [him]," to his face or to anyone else. He also said he did not "put too much effort into it" and "tr[ied] to ignore it."

None of these comments mentioned anything about religious beliefs, focusing instead on the consequences of not vaccinating. Even assuming those comments could be construed as motivated by religious animus, they are precisely the type of " 'occasional [or] sporadic' " comments that do not amount to a " ' "concerted pattern of harassment of a repeated, routine or a generalized nature" ' " so as to show a hostile work environment. (*Galvan*, *supra*, 37 Cal.App.5th at p. 564.) Nor do those limited comments amount to " ' "conduct [that] would have interfered with a reasonable employee's work performance" ' " or

" ' "seriously affected the psychological well-being of a reasonable employee." ' " (*Id.* at p. 565.)

### 3. Stelzer

Stelzer stated "LAUSD allowed hostile comments and attitudes about unvaccinated persons to permeate in my work environment even though LAUSD knew that unvaccinated persons like myself were unvaccinated due to our religious beliefs. Hostile comments included several hostile comments by LAUSD executives or board members, made publicly, accusing unvaccinated persons of being a problem or a threat. For example, before my termination, I saw a video on the LAUSD website of a board meeting where a board member expressed intense fear of and hostility towards unvaccinated persons. In another example, during a phone conversation with an interim superintendent of LAUSD, the interim superintendent laughed at me for seeking religious accommodation."

First, as with Akala, the conclusory statement Stelzer's work environment was "permeate[d]" with hostile comments is not evidence demonstrating a triable issue of material fact. (See *Taylor*, *supra*, 67 Cal.App.5th at p. 994.)

Second, the rest of Stelzer's declaration does not demonstrate a triable issue of material fact regarding a hostile work environment. Stelzer does not connect the public comments by "several" LAUSD officials to his own work environment or explain how the comments were hostile or " 'show[ed] a " 'concerted pattern of harassment of a repeated, routine or a generalized nature.' " ' " (*Galvan*, *supra*, 37 Cal.App.5th at p. 564.) Likewise, Stelzer points to no evidence those unspecified remarks would interfere with a reasonable employee's work performance and psychological well-being. (*Id.* at p. 565.) Finally,

23

that an interim superintendent once laughed at Stelzer for seeking a religious accommodation is the sort of isolated remark that does not amount to a generalized hostile work environment. (*Id.* at p. 564; cf. *Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 955–959 [multiple incidents of rudeness, taunting, and intimidation by several colleagues could show a hostile work environment].)

## III. Religious Discrimination

FEHA employment discrimination cases are analyzed under the "three-step process . . . based on the burden-shifting test . . . in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792." (*Serri, supra,* 226 Cal.App.4th at p. 860; see also § 12940, subd. (a).) " '[T]he employer . . . has the initial burden to present admissible evidence showing . . . that the adverse employment action was based upon legitimate, nondiscriminatory factors.' " (*Serri*, at p. 861.) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Ibid.*, italics omitted.)

The trial court concluded LAUSD showed "[its] termination of Plaintiffs was taken for a legitimate, nondiscriminatory reason"—their failure to comply with the vaccination mandate— and Plaintiffs failed to show there was a triable issue of material fact that was pretext for discrimination. We agree.

24

### A. LAUSD Showed Plaintiffs Were Terminated for a Legitimate and Nondiscriminatory Reason

An employer's "[r]easons [for its action] are 'legitimate' if they are 'facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.' " (*Hodges v. Cedars-Sinai Medical Center* (2023) 91 Cal.App.5th 894, 910.) The trial court correctly concluded LAUSD showed it "terminated Plaintiffs . . . because they did not comply with its vaccination policy and their request for an exemption from that policy could not be reasonably accommodated."

This record showed LAUSD adopted the vaccination policy to protect the health and safety of its students, its workforce, and its ability to deliver education services. Plaintiffs do not dispute this. The policy relied upon recommendations from scientists, doctors, and public health officials that requiring employee vaccinations was the best way to achieve those goals in fall 2021. Therefore, "all employees who had not submitted verifications of their having been vaccinated, regardless of the reason, were suspended" in October 2021, and those who did not ultimately submit verification of vaccination status "were processed for termination."

Plaintiffs do not dispute they did not submit vaccination verifications. Instead, they argue the vaccination policy was not neutral because it applied only to employees, not to "other adult users of district facilities." But the cases they cite for that proposition involve First Amendment challenges to laws and government regulations that "burden[] religious exercise." (*Bacon v. Woodward* (2024) 104 F.4th 744, 750; see also *Tandon v. Newsom* (2021) 593 U.S. 61, 62 (*per curiam*).) Plaintiffs have not pled a First Amendment cause of action, and these authorities

25

are not relevant to their FEHA religious discrimination cause of action. Plaintiffs tacitly recognize as much in their reply brief when they argue "constitutional decisions" are irrelevant to their FEHA reasonable accommodation cause of action.

Thus, we conclude LAUSD showed it terminated Plaintiffs for the legitimate and nondiscriminatory reason they failed to comply with the vaccination policy.

## B. Plaintiffs Did Not Show a Triable Issue of Material Fact That Reason Was Pretextual

The trial court noted "Plaintiffs did not specifically address [the] cause of action for discrimination in their opposition papers, and therefore have not met their burden to show that a triable issue of material fact as to whether [LAUSD] discriminated against [them] on the basis of their religions." Plaintiffs have not argued the trial court erred in that regard. Instead, they make a newly minted argument: that they demonstrated a triable issue of material fact regarding pretext because "after they requested religious exemptions, [LAUSD] treated them with hostility, refused to discuss alternative accommodations, and quickly moved to terminate them."

Because Plaintiffs raised this argument for the first time on appeal, we refuse to consider it. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 ["[W]e are not obliged to consider arguments or theories, including assertions as to deficiencies in defendants' evidence, that were not advanced by plaintiffs in the trial court."].) Moreover, Plaintiffs' reply brief acknowledges this cause of action turns upon the success of Plaintiffs' failure to accommodate cause of action which fails for the reasons discussed in part I, *ante*.

26

## IV.    Retaliation

" '[I]n order to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.' " (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91 (*Light*); see also § 12940, subds. (h), (*l*)(4).) That "requisite 'causal link' may be shown by the temporal relationship between the protected activity and the adverse employment action.' " (*Light*, at p. 91.) " 'Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action.' " (*Ibid.*)

Here, the trial court determined LAUSD had "met its burden of showing [its] termination of Plaintiffs was taken for a legitimate, nonretaliatory reason for the same reasons as set forth in connection with the court's ruling on Plaintiffs' . . . causes of action for discrimination." We agree with that conclusion for the same reasons we discussed in part III.A., *ante*.

Because LAUSD " 'produce[d] a legitimate reason for the adverse employment action' " (*Light*, *supra*, 14 Cal.App.5th at p. 91), Plaintiffs "ha[d] the burden of offering evidence sufficient to raise a triable issue of fact regarding intentional retaliation" (*id.* at p. 94). That is, they "must offer evidence sufficient to allow a trier of fact to find either the [LAUSD's] stated reasons were pretextual or the circumstances ' "as a whole support[] a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus." ' " (*Ibid.,* first brackets added.)

The trial court determined Plaintiffs failed to show LAUSD's asserted reason for their termination was pretextual or retaliatory because they "did not specifically address [this] cause of action . . . in their opposition papers." Plaintiffs do not dispute that characterization, but instead argue Code of Civil Procedure section 437c, subdivision (c) required the trial court to evaluate the merits of this cause of action based upon the record as a whole.

The burden-shifting framework applicable to retaliation causes of action requires the plaintiff opposing summary judgment—not the trial court sua sponte—to point to evidence sufficient to raising a triable issue of fact regarding intentional retaliation. (*Light*, *supra*, 14 Cal.App.5th at p. 94.) Plaintiffs failed to do so because their opposition to LAUSD's motion for summary adjudication did not address their retaliation cause of action. Moreover, Plaintiffs' reply brief acknowledges this cause of action turns upon the success of Plaintiffs' failure to accommodate cause of action–which fails for the reasons discussed in part I, *ante*. Summary adjudication was appropriate.

V.     **Failure to Prevent Discrimination and Harassment**

FEHA makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) The parties agree this cause of action is derivative of Plaintiffs' other FEHA causes of action. Thus, because Plaintiffs did not show any discrimination or harassment occurred, their failure-to-prevent cause of action necessarily fails. (Cf. *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314 [there must be " 'a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k)' "].)

28

## DISPOSITION

The judgment is affirmed. LAUSD is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1).)


RICHARDSON, J.

WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.*

---

\*      Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.